Good morning. Thank you for this opportunity to hear this case. First of all, I want to remind the court, I'm sure you know this is not a real ID Act case, so all the jurisprudence prior to that applies. The immigration judge in this matter, good-hearted as she is, misunderstood the facts, misstated the facts, misconstrued the facts, and got the law wrong. First of all, Ms. Scher, who has an abnormality of the uterus, she has a double uterus, which has now been confirmed by several doctors. One in China saying she had an abnormality, two in the United States, one who knew she had a double uterus, and the third one who confirmed it was a bicornate uterus. In such situations, she had a difficult time not becoming pregnant or having relevant birth control devices. As we know, the Ninth Circuit has concretely decided that these cases that don't involve exact force or physical restraint of a person, they're still coercive family planning, and that is when the government uses other means to restrain people from having more than one child, which is what occurred in this case. We have six incidences of very painful procedures imposed upon Ms. Scher because she was not allowed by the Chinese government to have more than one child. In the first procedure, as you will recall, the doctor said to her, you're pregnant, you're pregnant on both sides of your uterus, and if you leave the hospital, I will report this to your work unit. What are the consequences of that? She would be jobless, homeless, her children would not have the one-child certificate, and therefore would not be subject to benefits such as medical care or education. So these are very severe consequences. The second certainty... May I ask you a question? Please. You noted that this was before the present statute. Does that have any effect with respect to the credibility or review of credibility determinations? Absolutely. In what way? Absolutely. Thank you, Your Honor. In fact, under the former jurisprudence, you know, the standard of proof is that substantial evidence is required to doubt the alien's credibility. And while accorded deference, the credibility determination by an immigration judge in asylum proceedings must be supported by specific and cogent reasons. It's not that any sort of inconsistency can be used to deny asylum. It has to go to the heart of the claim. So anything to do with, for example, whether or not she knew whether her son could successfully ultimately get a visa, her first son in China, is inconsequential. It has to go to the heart of the claim. And isn't it true that we're still reviewing the BIA and it's the ground on which it decided the case? I'm sorry, Your Honor? Aren't we still, under whatever law it is, we're still reviewing the Board of Immigration Appeals decision and the ground on which it decided the case. Isn't that right? Well, you could say the law statutor is frozen. However, as I argued in my brief, one month after the IJ determined the case, the Ninth Circuit had a case called Wong v. Ashcroft, in which it was decided that discrepancies cannot be viewed as attempts by the asylum applicant to enhance his or her claim of persecution. They have no bearing on credibility. In that case, I'm sorry, and then there was another Wong v. Ashcroft filed in August of 2003, where there was a Ms. Wong that submitted to two abortions through coercive tactics of the Chinese government. And attached to that was a 1998 China profile of asylum claims, the same profile of claims that was submitted in this case,  which in that case, and filed August 29, 2003, Wong v. Ashcroft, the same profile was used to support that, quote-unquote, abortion and sterilization are important methods, along with IUDs, employed in implementing the one-child policy. But aren't we talking about inconsistencies in her testimony? That's what the judge relied on, the immigration judge. Isn't that correct? I mean, she had two abortions here in the United States. Yes. Wasn't that inconsistent with some of the testimony that she gave about her fears in China? She told the truth that she had those abortions in the United States. At that time, she already had two children, one in China that she hadn't seen in over a decade, and the second, she already had a child in the United States. After she had that child and filed for asylum and failed in getting that claim approved, she had a deportation order against her, which was active. They lived in an apartment where they couldn't even cook. She had no access to medical care. She wouldn't have been able to support that child. She'd already had to send the second child born in the United States back to China because she couldn't support him here. But she didn't lie about that. She was actually that truth didn't go to enhance her claim. In fact, the judge said it went against her beliefs. Why didn't she want to go back to China within the statutory grounds that we had to deal with? Right. Because she feared that once the Chinese government knew she had a second child, they would know she had violated the policy, and there were economic consequences of that, very severe. And secondly, she was afraid because of her religion, because as testified by the reverend of the temple, when they send missions back to China, the registered churches in China only follow the government's policy of propaganda. But they don't preach about God. It's a country that's communist, and there's atheism. But the way she only could freely pursue a religion would be in these unregistered churches, where true pursuit of religion can be found. So there were two things she was afraid of, persecution on account of the one child, and secondly, on account of religion. But don't we have to find that or don't we have to agree that the abortion was forced? And I think that's what she's going back to, her very first abortion, and that's what she's saying was forced upon her. You could say forced. You could say within the definition, again, under the Ninth Circuit, forced doesn't have to mean physical restraint. It's coerced. I'm going to tell your factory. This is 1984 in China. People were still wearing Mao suits. It was the Iron Rice Bowl. If she didn't have her job at the factory, if she lost that job, she would have no income. Her husband was in graduate school. She was the sole support of herself and her one child. When she even lost, the second time when she had the abortion and her work unit knew about it, they did take action against her. They said you have to work every legal holiday. She talked about having barely been able to feed her child and being very sorry toward him that this reduction in income had such an impact. So that's your definition of forced. I mean, not the physical force, but what you've just explained. Yes, under the Ninth Circuit, that's the way forced is described. I believe it would be a travesty of justice to say that there's an adverse credibility determined that it could be supported because in the United States, after she's had a second child and there was a deportation order against her, she would exercise her right to family planning in this country. The objection and the affront to human dignity that occurs in China is the government interferes with how many child with your own procreative productive rights. The government is telling you you can only have one child. And if you're pregnant with another, we're going to take that child from you and we're going to force you to have an IUD inserted. And the way they implement it is without any anesthesia at all. Now, it would be a travesty of justice to say once Ms. Scherer is in the United States, if she wants to engage in family planning, she can do so. The United States government should have nothing to say about her, whether she can have an abortion or not. And she very much explained that those two abortions in the United States. It's not whether the U.S. government has anything to say about whether she gets an abortion because it didn't and she did. Right. The question is whether that makes it inconsistent, her claim that in China, since she didn't want additional children in the United States when she had the opportunity of having additional children, whether that makes her claim that her abortions in China were coerced less credible. That was completely a decade apart. Those coercive abortions in China were 1984 through, say, 1990 or so before she came to the United States in 1993. She already had the two children when she became pregnant again. And because of her unique situation with a bicornate eunuch, she becomes pregnant very easily. So even in the United States. Is the claim that she was coerced originally, does that go simply to the question as to whether she gets the presumption of persecution if she were returned to China? Is that what this goes to? Yes. Okay. Now, if that's the case and she has chosen not to have children here in the United States, then what is there about her reproductive state in China where she would be threatened with persecution if she were returned to China? Well, this case was set years ago. I mean, they've been in the United States for 17 years. The child, Stephen Lee, the second child, was born in 1995. At that time, she'd returned to China. She would have been persecuted most likely by sterilization. And that's what the Wong Court in August of 2003, the Ninth Circuit, decided with the same set of facts of country conditions that that's what would happen to people in such situations. And are we to judge this by 1995 standards? At the time, yes. And up to the time that she was afraid to go back to China in 2003, 2004, 2003 when this case was argued in San Francisco. If we were to agree with you, what do we need to do here? Would we return it to the BIA for consideration of changed country conditions? What happens? I would like to overturn the credibility determination of the immigration judge as insufficient. The other option obviously is, as you suggest, to go back for country conditions. Because the IJ submitted a country profile from 1998 with her decision that was never even filed before the court. Neither side got to argue whether it was relevant or what aspects of it were relevant. And then the Ninth Circuit decided a month later after that that, in fact, that supports the idea of the fear of return. Okay. You have used your time. Okay. We should hear from the government. And if we have any further questions, if you will, we'll ask them. Thank you. Thank you. May it please the Court, Andrea Jivas on behalf of the Attorney General. This Court should deny the petition for review because the petitioners have failed to show eligibility for asylum and withholding of removal. The immigration judge, affirmed and adopted by the BIA, so this Court should evaluate both the immigration judge and the Board's decision, found Petitioner Ms. Xi to be adversely credible. Now, all of the inconsistencies the judge noted do go to the heart of the matter. And because this is a pre-real ID case, that is important. Now, this is a case where actions do speak louder than words. As this Court mentioned previously, Ms. Xi feared returning to China because of her abortions. However, she came to the United States and had two subsequent abortions. When questioned, she was provided a chance to explain. She stated it was for economic reasons that she obtained that abortion. What is your response to the argument that she would be persecuted because she had two children? She violated the policy. Therefore, she will be persecuted and she, therefore, fears to go back because she will be viewed as in opposition to the one-child policy, which is a ground under the statute. Yes. And that would go to there was a 2001 state report which says there is no uniform policy about kids born abroad and returning into China. Now, there is a recent board decision where it states that the alien must meet the burden of demonstrating that they would enforce the policy to that specific alien. That mentioned the May 2007 state report, which again said there's no policy or official policy mandating sterilization if one kid is born abroad. The Second Circuit has viewed this and shall be much hazy and found that there is no uniform policy. So I take it if she could have shown that she was persecuted before she left because she had two children, in a hypothetical situation, the argument would be she'd be entitled to a presumption. But that isn't this case. And, yes, it's a little bit different because that second child was born abroad, which does make this case a little bit different. Yes. So going back to the inconsistency of the abortion, also there was some inconsistent testimony regarding her desire to have a second child. In the initial 1995 hearing, she said she did not want a second child because she did not plan on staying in the United States for very long. However, when questioned for an explanation as to that, she said that she dare not have a child and never mentioned anything about staying in the United States. Also, she claims that she fears going back to China for her religion. However, she joined Christianity while in the United States in around 1994. She's never been a Christian in China, so she has no direct experience in China and therefore just made a bare assertion regarding her fear of returning for her religion and stating that she would never join a registered church. Going to the case the petitioner has cited in Wang v. Ashcroft, I'd like to just make a few distinguishing points. The discrepancies in that case that the immigration judge focused on were dates, which this court has said should not be of help, and the husband's work hours. Clearly, in this case, the discrepancies are much greater. They go to her abortion, which goes to the Harvard claim, her testimony about wanting a second child. Therefore, this case is distinguishable from that. Counselor, let me turn to what I think is the principal discrepancy relied on by the IJ, which goes to the fact that she had a second child in the United States and then had two subsequent abortions. Why isn't the petitioner's explanation sufficient? Why isn't it sufficient that she can say, Look, I came to the United States, my birth control failed, I had a second child, happy to have that child, but I couldn't afford to have any more children under my circumstances in the United States. And so for very different reasons, I had abortions in the United States than the reasons for which I was compelled to have abortions in China 10 years earlier. What makes that an inconsistency? Because she's stating that she fears to return for her worship. She fears claiming that she might have an abortion or be sterilized in China. However, she comes here and has abortions. She states economic reasons. I think the economic reasons would still apply in China as well. But that's speculation on the government's part, isn't it? I mean, this is a very different context in China. For the government to speculate that she might suffer bad economic conditions in China and therefore not desire children is very different from denying that if she goes back and she were to become pregnant, that the government in China would force her to have an abortion, even if she thought she could afford one. Even if she thought she could afford the child. Okay, so if that would be speculation, then I would go back to the state report which says there is no uniform policy. I thought that you said that the uniform policy went to how the Chinese government deals with foreign-born children who are returned to China. Okay, yes, then I must ask for you to repeat the question. Okay, all right. The question is, what makes it inconsistent for her to say, on the one hand in China I was forced to have six abortions, I was forced by the government, I would have liked to have had a second child, but I couldn't. I came to the United States where I am free to have a second child, but for economic reasons I could not afford a child, even though I wanted one. And so I had two abortions in the United States. What makes those statements inconsistent? Well, first of all, the inconsistency of the immigration judge is the religious aspect of it as well. I'm not talking about religion. I just want to talk about the question of the abortions, because that for me I think is the heart of the IJ's finding that her statements are inconsistent. So what makes those inconsistent? That is, she has different reasons for having abortions in China than she does in the United States. On the one hand, one is forced by the government, and on the other hand, it's forced by her economic circumstances. What makes that position inconsistent? I do believe she mentioned something about being in China that she was unable to afford them as well. So I think that the economic does reign throughout both the Chinese abortions and the United States abortions. If I remember correctly, she came to the United States and sent her children back to China because of economic situations. And during her whole abortions, the six that she had in China, she mentioned her husband was not working. So I believe the economic plays throughout the whole eight abortions that she did have. I understand what you're saying about... So the government's position is that there's some indicia that she had abortions in China for economic reasons and not because she was coerced by government policy. Yes, and I think the immigration judge questioned whether it was forced as well because of the economic position. She states that her husband was working, and I believe the petitioner's counsel also mentioned that she lost money because of the no legal holidays aspect. I think the economic issues reign throughout the whole eight abortions. But don't you agree that it's the first abortion that is the focus of the forced abortion? Yes, and I think the immigration judge questioned whether that was forced because Ms. Xi's biggest issues with that first abortion was my husband wasn't there, it was raining, I had to ride my bike home. It wasn't so much that she resisted the abortion. The immigration judge focused on she would have had it, it just appeared to have been a different... She wanted it on a different day. She didn't say that. No, but the immigration judge... I mean, there was the inference. I mean, they told her she has to have an abortion that day. Period. Or they would tell her job, right, and she feared losing her job in the economic context. Isn't that forced? I mean, there is case law regarding that being forced. However, those situations, like the court said in Dane, the ash crop which the petitioner relies on to say what force is, that was a different situation. The petitioner was thrown into a van, forced onto the table, and held down. It appears from the immigration judge's decision that she just wanted... She didn't like the circumstances she was under that initial day and she would have gone back to an abortion. So the immigration judge questioned whether that was actual force. Do we really have a case that says that if you can't afford to have another child so you have an abortion, that it's forced? Not that I'm aware of, Your Honor. Actually, could you repeat that one more time? I just wondered what our law is on force, if you could give me the government's position on what is the law with respect to force where it's not physical force. Or if it's not some kind of threat of something happening. There is case law in the Dane case. They discussed force as well as in the Dane v. Ashcroft case. But those cases that petitioner cited in a brief deals with petitioner being thrown into a van, forced onto the table. In the Dane case, the employment man took the woman to the hospital. So I'm not aware of... I'm trying to help you out here. I just was not aware that we had any law that said where the coercion is of economic circumstances that are not caused by a government threat or anything, that that's force within the meaning of the statute. Correct. And I'm sorry. I was just going through that case. Those cases are separate. I'm not aware of any case that just rides on economics alone. No. And I hope that answered your question. I apologize. Are there any further questions of the government? Thank you. Thank you. Are there any further questions of the petitioner? No. All right. Thank you. Well, you don't have... You've used your time. We helped you use it, but... No, you were in the red. Thank you. The case just argued is submitted for decision.
judges: Gonzalez, Schroeder, Bybee